## IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
## IN AND FOR POLK COUNTY, FLORIDA
## CIVIL DIVISION

Brandon Gibson,

    *Plaintiff,*

vs.

    CASE NO. _____

FactorTrust, Inc., et al.,

    *Defendants.*

    DIVISION _____

### SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on the Defendant(s) *whose name and address is*:

        **FactorTrust, Inc.**
        c/o Corporation Service Company
        251 Little Falls Drive
        Wilmington, DE 19808.

    Each Defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, *whose name and address is*:

        Bryan J. Geiger, Esq.
        Seraph Legal, P.A.
        2002 E. 5th Ave. Ste. 104
        Tampa, FL 33605
        BGeiger@SeraphLegal.com

within 20 days after service of this summons on that defendant, exclusive of the day or service, and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**STACY M. BUTTERFIELD**
As Clerk of the Court
Civil Division
255 N. Broadway, Drawer CC-12
P.O. Box 9000
Bartow, FL 33831

By:_____
As Deputy Clerk    07/01/2020
(863) 534-4557



**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Office of the Court Administrator, (863) 534-4690, within two (2) working days of your receipt of this Summons; if you are hearing or voice impaired, call Telephone Device for the Deaf at (863) 534-7777 or Florida Relay Service at 711.**

IN THE COUNTY COURT FOR THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

Brandon Gibson,

    *Plaintiff,*

    v.

Niizhwaaswi, LLC,
LDF Holdings, LLC,
Jessi Lee Phillips Lorenzo,
Creditserve, Inc.,
Eric Welch,
RBC Servicing, LLC,
Skytrail Servicing Group LLC,
William C. Pruett,
FSST Financial, LLC,
Flandreau Santee Sioux Tribe,
The Iipay Nation of Santa Ysabel,
Axis Advance, LLC,
Blue Dart Ventures, LLC, *and*
FactorTrust, Inc.,

    *Defendants.*

Case No. _____

Ad Damnum:  **$28,000 plus Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT & JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Brandon Gibson** ("**Mr. Gibson**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Niizhwaaswi, LLC ("Niizhwaaswi")**, LDF Holdings, LLC ("**LDF Holdings**"), **Jessi Lee Phillips Lorenzo**, f/k/a Jessi Lee Phillips ("**Lorenzo**"), **Creditserve, Inc.** ("**Creditserve**"), **Eric Welch** ("**Welch**"), RBC Servicing, LLC ("**RBC Servicing**"), Skytrail Servicing Group, LLC ("**Skytrail**"), William C. "Cheney" Pruett ("**Pruett**"), FSST Financial, LLC ("**FSST Financial**"), Flandreau Santee Sioux Tribe ("**Flandreau Tribe**"), The Iipay Nation of Santa Ysabel ("**Iipay Nation**"), Axis Advance, LLC ("**Axis Advance**"), Blue Dart Ventures, LLC ("**Blue Dart**"), and FactorTrust, Inc. ("**FactorTrust**")  (collectively, "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Mr. Gibson against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

3.     The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.     Venue is proper in Polk County, Florida, pursuant to Section 47.011, Florida Statutes because the events giving rise to this cause of action were caused by the Defendants and occurred within Polk County.

## PARTIES

### Mr. Gibson

5.     **Mr. Gibson** is a natural person residing in Lakeland, Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### LDF Holdings

6.     **LDF Holdings** claims to be a wholly-owned subsidiary of the *Lac du Flambeau Band of Lake Superior Chippewa Indians* ("LDF Tribe").

7.     LDF Holdings acts as the parent company to dozens of payday lending companies chartered by the LDF Tribe.

8.     LDF Holdings claims to operate from the second floor of a cigarette store called the Smoke Shop at **597 Peace Pipe Road, Lac du Flambeau, WI 54538.**

### Niizhwaaswi

9.      **Niizhwaaswi** is a limited liability company that conducts online lending under the fictitious name "**Loan At Last**" via its website, www.loanatlast.com.

10.     Niizhwaaswi claims to be a wholly-owned subsidiary of LDF Holdings.

11.     Niizhwaaswi conducts business in Polk County over the internet, via postal mail, via Automated Clearing House transactions, and over the telephone.

### Lorenzo

12.     **Lorenzo** is a natural person who on information and belief resides at **502 S. Fremont Ave., Apartment 1107, Tampa, FL 33606**.

13.     According to Lorenzo's LinkedIn profile, as well as information posted on LDF Holdings' website, Lorenzo is the president of LDF Holdings.

### Creditserve

14.     **Creditserve** is a California corporation with a primary business address reported as **137 N. Larchmont Blvd., Suite 705, Los Angeles, CA 90004**.

15.     Creditserve's registered agent is Christopher Chatham, **3109 W. Temple St., Los Angeles, CA 90026**.

### Welch

16.     **Welch** is a natural person, believed to reside at 137 N. Larchmont Blvd., #705, Los Angeles, CA 90004 or in the Dallas, TX area.

17.     Welch is the owner and CEO of Creditserve.

### RBC Servicing

18.     **RBC Servicing** is a Texas limited liability company that conducts online lending via its website, www.riverbendcash.com.

19.     According to its website, RBC Servicing's "Standard Biweekly Loan" bears an annual interest rate of **779.76%**. **SEE PLAINTIFF'S EXHIBIT A.**

20.     Despite lending to consumers in Florida, RBC has not registered with the Florida Office of Financial Regulation as a foreign entity transacting business in Florida and holds no Florida licenses.

21.     RBC Servicing's principal business address is **1614 Hampton Rd., Texarkana, TX 75503.**

22.     RBC Servicing's Texas registered agent is **Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.**

### Skytrail

23.     **Skytrail** is a Texas limited liability company that conducts online lending via its website, www.skytrailcash.com.

24.     According to its website, Skytrail's loans charge a "standard interest rate" of 780.30%. **SEE PLAINTIFF'S EXHIBIT B.**

25.     Despite lending to consumers in Florida, Skytrail has not registered with the Florida Office of Financial Regulation as a foreign entity transacting business in Florida and holds no Florida licenses.

26.     Skytrail's principal business address is **1614 Hampton Rd., Texarkana, TX 75503.**

27.     Skytrail's Texas registered agent is **Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.**

### Pruett

28.  **Pruett** is a natural person residing at **6801 Summerhill Rd., Texarkana, TX 75503.**

29.  On information and belief, Pruett is the sole officer and director of RBC Servicing and Skytrail.

### FSST Financial, LLC and the Flandreau Santee Sioux Tribe

30.  The **Flandreau Santee Sioux Tribe** is a federally recognized tribe with a primary address of **603 W. Broad Ave, Flandreau, SD 57028.**

31.  **FSST Financial** claims to be wholly owned by the Flandreau Santee Sioux Tribe, with a primary address of **603 W. Broad Ave, Flandreau, SD 57028.**

32.  FSST Financial conducts business as "Rushmore Financial" and provides online payday loans through its website www.rushmorefinancial.net.

33.  According to its website, FSST Financial charges interest rates as high as 1,505.63%, with a *minimum* interest rate of 388.55%. **SEE PLAINTIFF'S EXHIBIT C.**

### Axis Advance and Iipay Nation

34.  **Iipay Nation**, also known as the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation, is a federally-recognized Indian tribe of Kumeyaay Indians, sometimes known as Mission Indians, located in southern California.

35.  **Axis Advance** is a limited liability company which claims to be wholly-owned by Iipay Nation.

36.  **Axis   Advance** provides   online   payday   loans   through   its   website, www.axisadvance.com.

37.  Axis Advance's website contains an "APR Disclosure" which states: "APR range for a $300-$1500 loan is 420%-780%." **SEE PLAINTIFF'S EXHIBIT D.**

38.     Iipay Nation and Axis Advance can be served at **100 Schoolhouse Canyon Rd., Santa Ysabel, CA 92070.**

## Blue Dart

39.     **Blue Dart** is a Kansas limited liability company with a primary business address of **8900 Indian Creek Pkwy Suite 300, Overland Park, KS 66210.**

40.     Blue Dart describes itself on its LinkedIn® profile as "a solutions company for businesses big and small providing marketing, compliance, human resources, technology, and accounting services." **SEE PLAINTIFF'S EXHIBIT E.**

41.     Blue Dart's website indicates that it provides services including human resources, marketing, and accounting to its clients.

42.     Blue Dart is not registered to conduct business in the State of Florida.

43.     Blue Dart's Kansas registered agent is **Rak Services, Inc., 4200 Somerset Drive Suite 208, Prairie Village, KS 66208**.

## FactorTrust

44.     **FactorTrust** is a Delaware limited liability company with a principal business address of **P.O. Box 3653, Alpharetta, GA, 30023.**

45.     FactorTrust's Delaware registered agent is **Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.**

46.     FactorTrust is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses various means of interstate commerce for the purpose of

preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Usurious Loans Prohibited in Florida

47. The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

48. Section 687.071, Florida Statutes renders the issuing of a loan with annual interest rates **greater than 45%** a felony.

49. Section 687.071(7), Florida Statutes renders any such usurious loan unenforceable in Florida, sating "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

50. Florida's usury statutes "protect against the oppression of debtors through excessive rates of interest charged by lenders." *Sheehy v. Franchise Tax Bd.*, 84 Cal.App.4th 280, 283, 100 Cal. Rptr. 2d 760 (2000). Any person who willfully makes such a loan, in addition to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

### Sovereign Immunity as a Defense to State Usury Laws

51. In order to avoid state usury laws, prospective lenders engage in a business model commonly referred to as a *Rent-A-Tribe* scheme.

52. In such a scheme, non-tribal payday lenders attempt to circumvent state and federal laws which prohibit usurious loans. They do this by issuing loans in the name of a Native

American tribal business entity that purports to be shielded from state and federal law via tribal sovereign immunity. In reality, the tribal lending entity is usual a mere "front" for an illegal lending scheme; all substantive aspects of the payday lending operation are performed by individuals and entities that are unaffiliated with the Native American tribe. In exchange for "renting" its sovereign immunity to the individuals and entities running the payday lending scheme, the Native American tribe receives a fraction of the revenues generated, almost always in the low single digits.

53. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

54. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

55. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, as the operations of the lender are conducted off tribal land, by non-tribal members, and predominantly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

### RBC Servicing and Pruett

56.     As aforementioned, RBC Servicing operates the payday lending website www.riverbendcash.com.

57.     Through this website, RBC Servicing offers loans at interest rates of close to 800% annually.

58.     These loans are usurious and unenforceable in the state of Florida.

59.     In order to skirt state usury laws, RiverbendCash.com claims to be operated by Riverbend Finance, LLC, an entity purportedly organized under the laws of the Fort Belknap Indian Community (the "**Fort Belknap Tribe**").

60.     However, Riverbend Finance, LLC and RiverbendCash.com are in truth operated by Pruett and his company, RBC Servicing.

61.     Pruett made a deal around 2012 to "rent" the Fort Belknap Tribe's name in an effort to gain sovereign immunity.

62.     At this point in time, the Tribe had zero experience in the consumer lending industry, having never previously engaged in lending money to non-Tribal members, commercially.

63.     As common sense would dictate, no legitimate "lender" would provide a large credit line to an impoverished group of American Indians with poor credit ratings, no real assets, and no experience in consumer lending.

64.     The credit line was not the result of a simple lender/borrower relationship, but a more nefarious scheme in which loans made by Riverbend Cash are not really made by the Fort Belknap Tribe; rather, Pruett simply hires the Tribe to *appear* to own and run it, while he and his companies maintain tight control of all operations and receive more than 97% of the profits.

65.     Public records show dozens of companies registered with the Texas Secretary of State in Pruett's name, including Gladewater Cash Now LLC, Texarkana EZ Cash Advance Inc., Sulphur Springs Cash Express LLC, and others.

66.     Archived records from the Domain Name Registration database show the website riverbendcash.com was registered on March 23, 2012, to My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501. **SEE PLAINTIFF'S EXHIBIT F.**

67.     The administrative and technical contact was John Humphrey ("**Humphrey**"), jhumphrey@dmpinvestments.net, My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501, phone (903) 794-0013. *Id.*

68.     Humphrey is the Chief Financial Officer of DMP Investments LLC, a company owned by Pruett.

69.     As of 2019, registration of the riverbendcash.com domain has been switched to Domains By Proxy, LLC, a service which enables its clients to maintain anonymous registrations.

70.     Current records show that the servers for riverbendcash.com have an IP address of 50.116.18.253, which corresponds to a physical location in Dallas, Texas. **SEE PLAINTIFF'S EXHIBIT G.**

71.     The address 1614 Hampton Rd., Texarkana, TX is a commercial building with the name "Roundstone" prominently displayed on the exterior. **SEE PLAINTIFF'S EXHIBIT H.**

72.     Pruett is also the managing member of Roundstone.

73.     Further, tradeline data reported to FactorTrust about Riverbend Cash loans indicate the name of the lender is not Riverbend Cash in Montana, but rather Pruett's own company, "RBC Servicing, LLC, 1614 Hampton Road, Texarkana, TX 75503." **SEE PLAINTIFF'S EXHIBIT I.**

74.     Upon information and belief, "RBC" is short for "River Bend Cash."

75. Thus, according to RBC and Pruett's reports to FactorTrust, its loans are **actually made by RBC**, a company that Pruett owns and controls and not, as the website riverbendcash.com claims, made by the tribal Riverbend Finance, LLC.

76. RBC Servicing operates Riverbend Finance, LLC and is the true source of its loans.

### Pruett, Skytrail and LDF Holdings

77. In a similar fashion, defendant Skytrail operates the website www.skytrailcash.com ("**Skytrail Cash**").

78. Skytrail Cash *claims* to be owned and operated by LDF Holdings, and thus claims to fall under the sovereign immunity of the LDF Tribe.

79. The LDF Tribe, through LDF Holdings, is perhaps the most active of all the federally-recognized tribes in term of renting its sovereign immunity.

80. LDF Holdings has dozens of simultaneously active "rent-a-tribe" schemes, with myriad different non-tribal investors.

81. The process is relatively straight-forward: the LDF Tribe mints a new "tribal" limited liability company, supposedly organized under Tribal law, for each new investor. Each new investor then runs his or her own "tribally owned" website, offering consumers loans at interest rates between 450% and 1100% annually.

82. Despite allegedly owning and operating dozens of payday loan websites, transacting tens of millions of dollars in loans per month, every LDF Holdings website states that the business office is at the same location: the second floor of a small building located at 597 Peace Pipe Rd., Lac Du Flambeau, WI 54538. **SEE PLAINTIFF'S EXHIBIT J.**

83. In reality, no substantive services are performed at this address, as each investor operates its own lending website from its own location.

84.    Indeed, Lorenzo, CEO of LDF Holdings, lives in an apartment complex in Tampa – more than one thousand miles from Tribal land.

85.    Lorenzo maintains a LinkedIn profile which states that she worked for Triax Management & Dater Portflio between August 2015 and December 2016. Her description of this company practically telegraphs her former employer's business model of selling sovereign immunity to non-tribal business owners, stating her position was "**Director Of Sovereign Sales**," and explaining, "In today's *regulatory environment* it is very important to do business with people that will do things the right way. Triax and Dater have been building very successful businesses over the past 5 years. Our success formula is simple: *Identify Great Tribes, Financiers, Servicers and Best in Class Legal Teams* and have them work cooperatively to build a very profitable compliant business based upon consumer satisfaction." (Emphasis added.)

86.    The frequency with which LDF Holdings creates tribal corporations specifically to benefit particular non-tribal individuals, combined with the fact the CEO of LDF Holdings is a non-tribal member apparently hired for her expertise in crafting "rent-a-tribe" agreements, suggests that LDF Holdings is more of a sovereign immunity rental agency than an actual tribal lender.

87.    Further, domain name registration records show that **skytrailcash.com** was registered, as of June 19, 2012, to My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501. **SEE PLAINTIFF'S EXHIBIT K.**

88.    As with riverbendcash.com, the administrative and technical contact for skytrailcash.com was Humphrey, jhumphrey@dmpinvestments.net, My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501, phone (903) 794-0013. *Id.*

89.     Pursuant to records from the Texas Secretary of State, Pruett is the owner of Skytrail Servicing Group, LLC.

90.     As such, it is clear that Pruett invested with LDF Holdings for the purpose of claiming that the payday loans issued through www.skytrailcash.com were issued by the LDF Tribe and entitled to sovereign immunity, when, in all actuality, skytrailcash.com is operated by, and for the benefit of, Pruett and his company, defendant Skytrail Servicing Group, LLC.

## Pruett, RBC Servicing, Skytrail, Lorenzo and LDF Holdings Obtain Credit Reports Regarding Mr. Gibson from Clarity Services, Inc.

91.     On November 29, 2018, Pruett and Skytrail obtained a credit report from Clarity Services, Inc. ("**Clarity**"), a CRA, regarding Mr. Gibson.

92.     Similarly, on January 7, 2019 and January 23, 2019, Pruett, through RBC Servicing, obtained credit reports from Clarity regarding Mr. Gibson.

93.     In each instance, Clarity then obtained supplemental data from Experian and incorporated such data into its report it sold regarding Mr. Gibson.

94.     Experian maintained a record of these inquiries from Clarity. **SEE PLAINTIFF'S EXHIBIT L.**

95.     Clarity's inquiry regarding RBC Servicing was recorded as "CLARITY SERVICES INC…on behalf of RBC/RIVERBEND." *Id.*

96.     "RBC/RIVERBEND" is shorthand for Riverbend Cash/Riverbend Servicing. The address associated with the inquiry was 1614 Hampton Rd., Texarkana, TX 75503. *Id.*

97.     Experian recorded Skytrail's inquiry as "CLARITY SERVICES INC…on behalf of SKY TRAIL CASH (5962) for 30." *Id.*

98. The address listed for Skytrail's inquiry was 597 Peace Pipe Road, Floor 2, Lac Du Flambeau, WI 54538 - the address of the LDF Smoke Shop. *Id.*

99. Although Skytrail and Pruett requested the report from Clarity, the fact that LDF Tribe's Smoke Shop address appears on the inquiry illustrates that LDF Holdings and its president, Lorenzo, were aware that reports were being requested and they authorized and condoned such activities.

100. To obtain a credit report regarding a consumer, the requesting party must have a *Permissible Purpose* for doing so pursuant to the FCRA, 15 U.S.C. § 1681b.

101. Mr. Gibson never consented to any credit report being obtained regarding him by RBC Servicing, Skytrail, Sky Trail Cash, Riverbend Finance, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities.

102. At the time of the inquiries, Mr. Gibson had no accounts with RBC Servicing, Skytrail, Sky Trail Cash, Riverbend Finance, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities.

103. Mr. Gibson never applied for any loan with RBC Servicing, Skytrail, Sky Trail Cash, Riverbend Finance, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities.

104. Pruett and RBC Servicing thus lacked a permissible purpose for obtaining a credit report regarding Mr. Gibson – on both January 7, 2019 and January 23, 2019.

105. Pruett and Skytrail similarly lacked a permissible purpose for obtaining a credit report regarding Mr. Gibson on November 29, 2018.

106. Due to their participation in the Rent-A-Tribe scheme, knowledge, and active involvement in requesting consumer reports, LDF Holdings and Lorenzo are jointly and severally liable with Pruett and Skytrail for the impermissible credit pull on November 29, 2018.

107.    On information and belief, Pruett, RBC, and Skytrail purchased information regarding Mr. Gibson from an online *Lead Generator* which provided information regarding Mr. Gibson such as his name, addresses, employers, and bank account information.

108.    Pruett, RBC and Skytrail then pulled a report from Clarity to determine if Mr. Gibson was a suitable candidate for a loan.

109.    On information and belief, the lead generator never disclosed, to Mr. Gibson, the identity of the end user(s) of his personal information and or that any of the defendants would receive his credit report.

### Welch, Creditserve, Niizhwaaswi, and LDF Holdings

110.    LDF Holdings also rents its immunity to Eric Welch and his company, Creditserve.

111.    Welch and Creditserve lend through www.loanatlast.com and the allegedly tribal limited liability company, Niizhwaaswi, LLC.

112.    Welch and Creditserve are the true issuers, servicers, and owners of the usurious loans issued through *Loan At Last* and Niizhwaaswi.

113.    Welch and Creditserve also control the operations of www.loanatlast.com and Niizhwaaswi.

114.    Indeed, Welch is a veteran of payday lending and owns, or owned, many payday lending companies, including Helping Hand Financial, Inc. ("**Helping Hand**"), which did business in Texas as CashCash, Inc.

115.    Around January 2015, Welch purchased the domain name www.loanatlast.com, evidencing his ownership and control of the lending website – not the LDF Tribe.

116.    Further, a record of inquiries made with ChexSystems, Inc., a Jacksonville, Florida CRA frequently utilized by the online payday lending industry, indicates that when "Loan At Last"

requested a report on another consumer, the inquiry was received from "CREDITSERV/LOANATLAST" in Los Angeles, California, not Lac Du Flambeau, Wisconsin. **SEE PLAINTIFF'S EXHIBIT M**.

117. Thus, CreditServe – not the LDF Tribe – operates *Loan at Last* and processes consumer applications, obtains leads, and otherwise controls the company.

### Welch and CreditServe Obtain Three Credit Reports Regarding Mr. Gibson

118. On September 11, 2018, November 28, 2018 and January 23, 2019, Welch and CreditServe, via Niizhwaaswi and *Loan At Last*, requested and obtained credit reports regarding Mr. Gibson from Clarity Services, Inc., a nationwide CRA.

119. Clarity, in turn, obtained supplemental data from Experian, which it incorporated into the report it sold to Welch and CreditServe.

120. A record of these inquiries was recorded by Experian as having been made "on behalf of LOAN AT LAST (5940) for 30." **SEE PLAINTIFF'S EXHIBIT L.**

121. The inquiries were made with the knowledge LDF Holdings and its president, Lorenzo, who authorized and condoned such activities.

122. Indeed, on information and belief, LDF Holdings and Lorenzo stood to gain personally from whatever revenue Welch and CreditServe might potentially collect from Mr. Gibson.

123. Mr. Gibson never consented to any credit report being obtained regarding him by Loan At Last, the LDF Tribe, LDF Holdings, Welch, Niizhwaaswi, CreditServe, or any related entities.

124. At the time of each of the inquiries, Mr. Gibson did not have any open accounts at with Loan At Last, the LDF Tribe, LDF Holdings, Welch, Niizhwaaswi, and/or CreditServe.

125.    Welch and CreditServe thus lacked a permissible purpose – on each of their three requests – for obtaining a credit report regarding Mr. Gibson from Clarity.

126.    Due to their participation in the Rent A Tribe scheme, knowledge, and active involvement in requesting consumer reports, LDF Holdings and Lorenzo are jointly and severally liable with Welch and CreditServe for each of their impermissible credit report requests.

### Axis Advance and Iipay Nation

127.    Axis Advance is an online payday lender which is purportedly owned by the Iipay Nation. Its website, www.axisadvance.com, has been operational since 2014.

128.    The IP address of its server is 69.16.237.64, which corresponds with a physical location in Lansing, Michigan, more than a thousand miles from the Iipay Nation's reservation. **SEE PLAINTIFF'S EXHIBIT N.**

129.    The Iipay Nation is a small tribe of approximately 250 members, whose reservation is in northeastern San Diego County, California.

130.    The tribe owned and operated the Santa Ysabel Resort and Casino and the Orchard Restaurant, and the Seven Oaks Bar and Grill, located in Santa Ysabel, until they went out of business on February 3, 2014, leaving behind unpaid debts of over $50 million, or approximately $200,000 for each man, woman and child enrolled in the Tribe.

131.    The Iipay Nation then pivoted to online gambling and operated several gambling websites including "Desert Rose Bingo," which enabled gambling by consumers from their homes outside of tribal land.

132.    The State of California sued the Iipay Nation, alleging the website facilitated illegal gambling. The State was successful, and the Ninth Circuit Court of Appeals upheld the lower court verdict, elaborating that while bets placed online are "received" in the Iipay Nation, where they

are legal, they were *initiated* in California, where such wagers are illegal. *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018)

133.    Despite this, the Iipay Nation continues to offer illegal payday loans, explaining in 6-point type at the bottom of its Axis Advance website that "all transactions will be deemed to have taken place in the Iipay Nation of Santa Ysabel" and thus subject only to the Nation's "laws."

134.    On information and belief, Iipay Nation has little control over the online lending operations and receives only a small percentage of the revenue generated by Axis Advance, as well as its other fully-rented sister websites, such as Tall Grass Finance and Sierra Financial.

135.    Axis Advance is managed and the loans are underwritten, funded, serviced and collected by non-tribe members in offices located separate and far from the reservation.

136.    Much of Axis Advance's operations are conducted in an office in Overland Park, Kansas, by a non-tribal entity, IND Services, LLC ("**IND Services**").

137.    IND Service's employees answer calls, sell payday loans to prospective borrowers, perform sales and marketing analysis, and collect past-due accounts.

138.    Even the few employees who work for Axis Advance work under the control and direction of IND.

139.    Non-tribal entities contribute the capital and their employees manage and service the loans. Not surprisingly, these non-tribal entities receive the overwhelming majority of profits from the lending enterprise.

140.    Iipay Nation's main contribution to the business is to facilitate the making of usurious loans to consumers in states which prohibit usury, such as Florida, under the cloak of supposed tribal sovereign immunity.

141.   Further, Axis Advance obtains credit reports from Clarity and other specialty CRAs.

142.   Like the aforementioned payday lenders, the Iipay Nation and Axis Advance use the information from these credit reports to target consumers whose credit reports indicate ongoing financial difficulties.

143.   Axis Advance then solicits these pre-screened consumers with a barrage of emails, text messages, and phone calls.

144.   Also like the aforementioned payday lenders, the Iipay Nation and Axis Advance purchase its consumer leads from the same online lead generators, and thus are able to obtain consumers' names, addresses, dates of birth, employment, banking information, and other personal information.

145.   Customers who call in response to Axis Advance's emails or text messages, or after visiting its website, are routed to IND's Overland Park, Kansas call center - *not Iipay Nation*.

146.   As such, it is clear that Axis Advance is run by non-tribal members, for the primary benefit of non-tribal members and is thus not entitled to the protections of Iipay Nation's sovereign immunity.

## Axis Advance and Iipay Nation Obtain Credit Reports Without a Permissible Purpose

147.   On or about November 30, 2018, Iipay and Axis requested and obtained a credit reporting regarding Mr. Gibson from Clarity.

148.   Clarity, in turn, obtained supplemental data from Experian, who recorded a record of the inquiry on behalf of "AXIS ADVANCE (2680) for 30" **SEE PLAINTIFF'S EXHIBIT L.**

149.    Mr. Gibson never consented to any credit report being obtained regarding him by Axis Advance, the Iipay Nation, or any of their related entities.

150.    Similarly, Mr. Gibson did not have any accounts with Axis Advance, the Iipay Nation, or any of their related entities and has not applied for any loans with Axis Advance, the Iipay Nation, or any of their related entities.

151.    Axis Advance and the Iipay Nation thus lacked a permissible purpose for obtaining Mr. Gibson's credit report.

### FSST Financial, Flandreau Tribe, and Blue Dart

152.    FSST Financial claims to operate several online payday websites, including Rushmore Financial.

153.    Rushmore Financial operates at www.rushmorefinancial.net and makes loans to consumers at interest rates as high as 750%.

154.    Because FSST Financial's loans exceed 45%, in violation of Section 687.071, Florida Statutes, its loans are usurious and unenforceable in Florida.

155.    To avoid state usury laws, FSST Financial claims to be owned and operated by the Flandreau Santee Sioux Tribe in remote Flandreau, South Dakota.

156.    The Flandreau Tribe has approximately 726 enrolled members.

157.    However, the Flandreau Tribe's website, https://santeesioux.com/economic-development/ fails to make any mention of any online lending activities in terms of its economic development programs.

158.    The web server for Rushmore Financial is, as of April 20, 2020, located at the IP address 23.236.62.147, corresponding to a physical location in Mountain View, California, more than 1,000 miles away from the Flandreau Tribe's reservation in South Dakota.

159.     Additionally, credit inquiries purportedly obtained by FSST Financial contain the address and phone number of the Kansas-entity, Blue Dart.

160.     Indeed, on November 28, 2018 and again on January 23, 2019, Blue Dart requested and obtained credit reports on Mr. Gibson from FactorTrust. **SEE PLAINTIFF'S EXHIBIT O.**

161.     Mr. Gibson's FactorTrust consumer disclosure shows that the reports were requested by Rushmore Financial, with an email address of customerservice@*fsstservices.com*. *Id.*

162.     However, upon receipt of the inquiries, FactorTrust requested and obtained supplemental information from Trans Union, which it incorporated into its reports.

163.     Trans Union maintained a log of these inquiries. **SEE PLAINTIFF'S EXHIBIT P.**

164.     Mr. Gibson's Trans Union consumer disclosure shows that the inquiry was made by "CUSTOMER 3655 via FACTORTRUST INCFSST FINA 8900 Indian Creek Parkway, Suite 300, Overland Park, KS 66210, phone (913) 951-8339." *Id.*

165.     Both the phone number and address belong to Blue Dart.

166.     The fact the credit inquiries purportedly made by FSST Financial contain the address and phone number of a Kansas entity, Blue Dart, suggests that (1) the reports were obtained by Blue Dart, who simply certified to the CRAs its identity as FSST and the Flandreau Tribe, and (2) the Flandreau Tribe is not meaningfully involved in the lending business, as the credit reports which are key to underwriting decisions were not obtained or analyzed by them.

167.     Further, no significant business activities relating to payday lending occurs on the Flandreau Tribe's reservation in South Dakota, and the tribe receives, at most, 3% of the revenues generated from Rushmore Financial.

168.    As such, FSST Financial is not an "Arm of the Flandreau Tribe" and is not entitled to claim a defense based on the Flandreau Tribe's sovereign immunity, especially considering none of the actions complained of happened anywhere close to its reservation in South Dakota.

169.    However, at all times relevant FSST Financial was acting in concert with the Flandreau Tribe, who, through their acquiescence as to FSST Financial's actions undertaken under its name, are jointly and severally liable for those actions.

170.    Blue Dart, as FSST Financial, purchases leads from online lead generators, thereby obtaining consumer names, addresses, employers, bank account information, and other personal information.

171.    Blue Dart then pull reports from Clarity and/or FactorTrust to determine if the consumer is a suitable candidate for a loan from Rushmore Financial, and, if they are, Blue Dart engages in a targeted marketing campaign involving emails, text messages, and other forms of solicitation, representing Rushmore Financial as a quick, easy, hassle-free way of obtaining a loan.

172.    Mr. Gibson never consented Blue Dart, FSST Financial, the Flandreau Tribe, or any of their related entities, obtaining his credit report.

173.    Similarly, Mr. Gibson did not have any accounts with Blue Dart, FSST Financial, the Flandreau Tribe, or any of their related entities and has not applied for any loans with any of them.

174.    Blue Dart, FSST Financial, and the Flandreau Tribe thus lacked a permissible purpose for obtaining Mr. Gibson's credit report – on both November 28, 2018 and again on January 23, 2019.

## FSST and the Flandreau Tribe Obtain an Additional Credit Report without Permissible Purpose

175.    FSST Financial and the Flandreau Tribe, in concert with an unknown investor controlling another FSST Financial "owned" payday website, 605lending.com, obtained a credit report from Clarity on November 30, 2018. **SEE PLAINTIFF'S EXHIBIT L.**

176.    Like the other FSST Financial entities, including Rushmore Financial, 605 Lending also purchases consumer leads from online lead generators, and obtains credit reports to ascertain if the lead should be targeted.

177.    Mr. Gibson never consented to any credit report being obtained by 650 Lending, FSST Financial, the Flandreau Tribe, or any of their related entities.

178.    Similarly, Mr. Gibson did not have any accounts with 650 Lending, FSST Financial, the Flandreau Tribe, or any of their related entities and has not applied for any loans with 650 Lending, FSST Financial, the Flandreau Tribe, or any of their related entities.

179.    FSST Financial and the Flandreau Tribe thus lacked a permissible purpose for obtaining Mr. Gibson's credit report in conjunction with 650 Lending on November 28, 2018.

### FactorTrust Fails to Utilize Reasonable Procedures to Ensure Accuracy

180.    In the past 24 months, FactorTrust has sold at least Eighteen (18) reports regarding Mr. Gibson to various entities.

181.    When producing reports for a fee regarding Mr. Gibson, FactorTrust was required, pursuant to 15 U.S.C. § 1681e(b), to follow reasonable procedures to assure maximum possible accuracy of the information provided in reports.

182.    "This language is not ambiguous; it creates an obligation on the part of the consumer reporting agency to ensure the preparation of accurate reports independent from § 1681i's reinvestigation requirement." *Adienne L. Padgett vs. Clarity Services, Inc.*, Case No. 8:18-

cv-1918-T-30CPT, M.D. FL (Tampa) 2018, citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008).

183.    Under no circumstance could the inclusion of logically flawed information be deemed a reasonable procedure to ensure maximum possible accuracy of a report.

184.    On information and belief, FactorTrust has virtually no procedures in place to ensure the accuracy of the data which it sold.

185.    Instead, FactorTrust relies upon its furnishers of data – the majority of whom are "tribal" payday lenders who make illegal loans to consumers - to accurately report data.

186.    Thus, even if the information is clearly incorrect, Factor Trust reports that information unedited, unverified, and unsubstantiated, on the consumer's credit report.

187.    FactorTrust knows of the deficiencies in its procedures, having been sued previously by other consumers; however, it has yet to alter its procedures.

188.    FactorTrust sold reports on Mr. Gibson indicating he worked at "RACETRAC" and made a salary of $5,500 weekly, as of November 28, 2018.

189.    However, the very next day, on November 29, 2018, his salary was reported as $9,000 bi-weekly, or $4500 per week, for a difference of $1,000 per week in a matter of one day.

190.    On January 29, 2019 Mr. Gibson's salary was reported as $5,916 bi-weekly, and on June 2, 2019 it was reported as $5,500 weekly.

191.    *None* of these figures are even close to accurate.

192.    FactorTrust simply records salary information received from various payday lenders when they make credit inquiries – information which, in almost all instances, the online payday lenders obtained second or third-hand themselves.

193.    Despite huge fluctuations in a very short time period and other obvious red flags, FactorTrust included the false information in its reports without any further verification.

194.    The inclusion of wildly inaccurate and speculative information indicates FactorTrust does not use reasonable procedures to ensure maximum possible accuracy of its reports. Inclusion of erroneous information, especially when the CRA "had reason to know something was amiss" violates the FCRA. *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972, 975 (M.D. Fla. 1985).

## FactorTrust's Errant Disclosure

195.    On January 21, 2020, Mr. Gibson requested and obtained his FactorTrust disclosure.

196.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Gibson's request, FactorTrust was required to "clearly and accurately" disclose all information in Mr. Gibson's file at the time of his request.

197.    Much of FactorTrust's disclosure was far from clear, and lacked any detail to allow Mr. Gibson to decipher it.

198.    For example, Mr. Gibson's disclosure stated the "Index indicating how often subject has changed addresses" had a value of "5," without any means to gauge what a ranking of "5" on this "index" corresponded to. **SEE PLAINTIFF'S EXHIBIT Q.**

199.    Likewise, the disclosure also stated "Indicates the field study type - grouped based on similar areas of study and average incomes for occupations typically associated with those fields of study" with a value of "-1" – again, without any means to gauge what a rating of "-1" implies, or if this is generally positive or negative score. *Id.*

200.    FactorTrust disclosed a "Wealth index based on relative value of real property and other assets on file" was "3," which is, again, meaningless without context of the possible range of rankings, and their meaning. *Id.*

201.    The "time since most recently reported felony conviction" shows as "-1," although elsewhere the report states "total felony convictions" of "0." *Id.*

202.    None of this information is "clear" to a reasonable consumer viewing his disclosure.

203.    None of the sources of information relied upon to determine Mr. Gibson's reported salary information were disclosed.

204.    FactorTrust knows that the FCRA, 15 U.S.C. § 1681g(a)(1), requires it to disclose the sources of information upon which it relies in compiling a consumer's credit report when providing a consumer disclosure; despite this requirement, and FactorTrust's knowledge of it, FactorTrust intentionally omits the sources of data relied upon when furnishing consumer disclosures.

205.    Mr. Gibson has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

### COUNT I
### <u>VIOLATIONS OF THE FCRA –</u>

#### <u>*Pruett, Skytrail, LDF Holdings, and Lorenzo only*</u>

206.    Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

207.    Pruett, Skytrail, LDF Holdings, and Lorenzo (together, "Skytrail and its Associates") violated **15 U.S.C. § 1681b(f)** when, pursuant to policies put in place by them, they knowingly obtained a credit report regarding Mr. Gibson from Clarity without any permissible purpose by requesting a credit report from Clarity in connection with an alleged *credit transaction* between Mr. Gibson and Skytrail Cash, when Mr. Gibson had no business or loan with Skytrail

Page **26** of 37

Cash, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction with any entity involving any of them.

208.    Assuming, *arguendo,* that Mr. Gibson had applied for a loan with Skytrail Cash or similar, such loan would have been *void ab initio* due to Florida's usury laws, and Skytrail and its Associates still would not have permissible purpose to obtain a credit report.

209.    Skytrail and its Associates are thus jointly and severally liable for the above-stated violations.

210.    As a result of their conduct, Skytrail and its Associates are jointly liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against Pruett, Sky Trail Cash, LDF Holdings, and Lorenzo, jointly and severally, for:

a.    The greater of statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.    Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.    Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF THE FCRA –

### *Pruett, RBC Servicing, LDF Holdings, and Lorenzo only*

211.    Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

212.    Pruett, RBC Servicing, LDF Holdings, and Lorenzo violated **15 U.S.C. § 1681b(f)** when, pursuant to policies put in place by Pruett, LDF Holdings and Lorenzo, RBC Servicing knowingly obtained a credit report regarding Mr. Gibson from Clarity without any permissible purpose on **two separate occasions** by requesting a credit report from Clarity in connection with an alleged *credit transaction* between Mr. Gibson and Riverbend Cash, when Mr. Gibson had no business or loan with Riverbend Cash, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction with any entity involving Pruett, RBC Servicing, Riverbend Cash, LDF Holdings, or Lorenzo (together, "**Riverbend and its Associates**").

213.    Assuming, *arguendo,* that Mr. Gibson had applied for a loan with Riverbend Cash or similar, such loan would have been *void ab initio* due to Florida's usury laws, and Riverbend and its Associates still would not have permissible purpose to obtain a credit report .

214.    Riverbend and its Associates are thus jointly and severally liable for the above-stated violations.

215.    As a result of their conduct, Riverbend and its Associates are liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against Pruett, RBC Servicing, LDF Holdings, and Lorenzo, jointly and severally, for:

e.    The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

f.   Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

g.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

h.   Such other relief that this Court deems just and proper

**COUNT III**
**VIOLATIONS OF THE FCRA –**

***Welch, Creditserve, Niizhwaaswi, LDF Holdings, and Lorenzo only***

216.   Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

217.   Welch, Creditserve, Niizhwaaswi, LDF Holdings, and Lorenzo violated **15 U.S.C. § 1681b(f)** when, pursuant to policies put in place by Welch, LDF Holdings and Lorenzo, Creditserve, acting by and through Niizhwaaswi, knowingly obtained a credit report from Clarity without any permissible purpose on **three separate occasions** by requesting a credit report from Clarity in connection with an alleged *credit transaction* between Mr. Gibson and Loan At Last, when Mr. Gibson had no business or loan with Loan At Last, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction involving Welch, Creditserve, Niizhwaaswi, LDF Holdings, and Lorenzo (together, "**Welch and his Associates**").

218.   Assuming, *arguendo,* that Mr. Gibson had applied for a loan with Loan At Last or one of its related lenders, such loan would have been *void ab initio* due to Florida's usury laws, and neither Loan At Last nor Welch and his Associates would not have had any permissible purpose to obtain a credit report .

219.   Welch and his Associates are thus jointly and severally liable for the above-stated violations.

220.    As a result of their conduct, Welch and his Associates are liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against Welch, Creditserve, Niizhwaaswi, LDF Holdings, and Lorenzo, jointly and severally, for:

a.    The greater of statutory damages of **$1,000.00** per incident (for a total of **$3,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.    Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## <u>VIOLATIONS OF THE FCRA – *FSST, Blue Dart, Flandreau Tribe*</u>

221.    Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

222.    FSST Financial, Blue Dart and the Flandreau Tribe violated **15 U.S.C. §1681b(f)** when, Blue Dart acting by and through FSST Financial, knowingly obtained a credit report from FactorTrust without any permissible purpose on **two separate occasions** by requesting a credit report from FactorTrust in connection with an alleged *credit transaction* between Mr. Gibson and Rushmore Financial, when Mr. Gibson had no business or loan with Rushmore Financial, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction with any entity involving FSST Financial, Blue Dart or the Flandreau Tribe ("**FSST and its Associates**").

223.   Assuming, *arguendo,* that Mr. Gibson had applied for a loan with Rushmore Financial or similar, such loan would have been *void ab initio* due to Florida's usury laws, and FSST and its Associates would not have had a permissible purpose to obtain a credit report.

224.   FSST and its Associates are thus jointly and severally liable for the above-stated violations.

225.   As a result of their conduct, FSST and its Associates are liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against FSST Financial, Blue Dart and the Flandreau Tribe, jointly and severally, for:

a.   The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

d.   Such other relief that this Court deems just and proper.

### COUNT V
### VIOLATIONS OF THE FCRA – *FSST, Blue Dart, Flandreau Tribe*

226.   Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

227.   FSST Financial and the Flandreau Tribe violated **15 U.S.C. § 1681b(f)** when they knowingly obtained a credit report from Clarity without any permissible purpose by requesting a credit report from Clarity in connection with an alleged *credit transaction* between Mr. Gibson

and 650 Lending, when Mr. Gibson had no business or loan with 650 Lending, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction with any entity involving FSST Financial, 650 Lending, or the Flandreau Tribe ("**650 and its Associates**").

228.    Assuming, *arguendo,* that Mr. Gibson had applied for a loan with 650 Lending or similar, such loan would have been *void ab initio* due to Florida's usury laws, and 650 and its Associates would not have had a permissible purpose to obtain a credit report.

229.    650 and its Associates are thus jointly and severally liable for the above-stated violations.

230.    As a result of their conduct, 650 and its Associates are liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against FSST Financial and the Flandreau Tribe, jointly and severally, for:

a.  The greater of statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.  Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

d.  Such other relief that this Court deems just and proper.

**COUNT VI**
**VIOLATIONS OF THE FCRA –** *Iipay Nation and Axis Advance only*

231.    Mr. Gibson incorporates Paragraphs 1 – 205 as if fully restated herein.

232.     Iipay Nation and Axis Advance violated **15 U.S.C. § 1681b(f)** when they knowingly obtained a credit report regarding Mr. Gibson from Clarity without any permissible purpose by requesting and obtaining a credit report in connection with an alleged *credit transaction* between Mr. Gibson and Axis Advance, when Mr. Gibson had no business or loan with Axis Advance, and Mr. Gibson never applied for or requested any credit or engaged in any other business transaction with any entity involving Axis Advance or the Iipay Nation.

233.     Assuming, *arguendo,* that Mr. Gibson had applied for a loan with Axis Advance or Iipay Nation, such loan would have been *void ab initio* due to Florida's usury laws, and neither Axis Advance or Iipay Nation would have had a permissible purpose to obtain a credit report.

234.     As a result of their conduct, Axis Advance and Iipay Nation are jointly liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against Axis Advance and the Iipay Nation, jointly and severally, for:

a.   The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson' actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

d.   Such other relief that this Court deems just and proper.

## COUNT VII
## VIOLATIONS OF THE FCRA-- *FactorTrust*

235.   Mr. Gibson Mr. Gibson adopts and incorporates paragraphs 1 – 205 as if fully stated herein.

236.   FactorTrust violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Gibson's request for his consumer disclosure by failing to *clearly and accurately* disclose to Mr. Gibson all of the information in his file at the time of the request. Specifically, FactorTrust included numerous bits of unintelligible data in its disclosure without explanation or context, such as a "field study type" with a value of "-1," when this information is unclear and impossible for a reasonable consumer to understand without any context, key, or further explanation.

237.   FactorTrust violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of reports sold regarding Mr. Gibson by selling **at least 17 reports** containing information, *sans* sources, which it knows, or should know, has virtually no probability of being true, such as Mr. Gibson's "reported" salary of $9,000 bi-weekly on November 28, 2018 and $5,500 bi-weekly on January 7, 2019, and the "time since most recent felony conviction" of "-1."

238.   FactorTrust's policies concerning data verification are the inverse of what the FCRA requires: reasonable procedures to ensure maximum possible accuracy of reports.

239.   Had FactorTrust maintained reasonable procedures to ensure maximum possible accuracy, much of the information reported by Factor Trust would not have been included as even a cursory review would have evidenced severe logical flaws.

240.   FactorTrust's conduct was willful and intentional or done with a reckless disregard for its duties under the FCRA.

241.    As a result of its conduct, FactorTrust is liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Honorable Court enter judgment against FactorTrust and for him as follows:

a.  The greater of statutory damages of **$1,000.00** per incident (for a total of **$18,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson' actual damages pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Gibson hereby demands a jury trial on all issues so triable.


Respectfully submitted on June 30, 2020, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com

/s/ *Bridget L. Dow*
Bridget L. Dow
Florida Bar No.: 1022866
BDow@seraphlegal.com

2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

## EXHIBIT LIST

A.    River Bend Cash's "Standard Biweekly Loan" as of June 30, 2020
B.    Skytrail Cash's "Standard Interest Rate" as of June 30, 2020
C.    Rushmore Financial's Rates and Terms as of June 30, 2020
D.    Axis Advance's Rates and Fees as of June 30, 2020
E.    Blue Dart's LinkedIn as of June 30, 2020
F.    Riverbendcash.com Domain Name Registration Records
G.    Riverbendcash.com IP Address Information
H.    Google Street View for 1614 Hampton Rd., Texarkana, TX
I.    FactorTrust Disclosure for Unrelated Consumer
J.    Google Street view of 597 Peace Pipe Rd., Lac Du Flambeau, WI 54538
K.    Domain Registration Records for skytrailcash.com
L.    Plaintiff's Experian Disclosure, August 27, 2019, Inquiries Excerpt
M.    Inquiry Appearing on unrelated Consumer's FactorTrust Disclosure
N.    IP Address Information for AxisAdvance.com
O.    Plaintiff's FactorTrust Consumer Disclosure, January 21, 2020, Inquiries Excerpt
P.    Plaintiff's Trans Union Consumer Disclosure, January 31, 2020, Inquiries Excerpt
Q.    Plaintiff's FactorTrust Consumer Disclosure, January 21, 2020, Additional Information
      Excerpt

## EXHIBIT A
## River Bend Cash's "Standard Biweekly Loan" as of June 30, 2020

6/30/2020                                    Sample Loan Table - RiverbendCash.com



(/Web/home/)

🔒 CUSTOMER LOGIN (/WEB/ACCOUNT/)

## SAMPLE LOAN INFORMATION

THE FOLLOWING EXAMPLES ARE REPRESENTATIVE OF LOANS AND REPAYMENT SCHEDULES FOR RIVERBEND CASH CUSTOMERS.

Please Note: You always have the option to repay the loan in full with no prepayment penalty. In fact, RiverbendCash.com encourages the accelerated reduction of loan principal to reduce the total number of payments made by the customer, thereby reducing the overall cost of credit.

**Standard Biweekly Loan**
**TRUTH IN LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 779.76% | $2,517.02 | $500.00 | $3,017.02 |

*Your Payment Schedule:*

Chat

# EXHIBIT A
# River Bend Cash's "Standard Biweekly Loan" as of June 30, 2020

6/30/2020                                                Sample Loan Table - RiverbendCash.com

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 19 | $150.80 | On every other _Friday_ beginning 06/12/2020 |
| 1 | $151.82 | 03/05/2021 |

**Standard Monthly Loan**
**TRUTH IN LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 775.89% | $1,669.27 | $400.00 | $2,069.27 |

_Your Payment Schedule:_

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 9 | $206.95 | On the 15th day of each month beginning 06/15/2020 |
| 1 | $206.72 | 03/15/2021 |

## GENERAL

HOME (/WEB/HOME/)

ACCOUNT (/WEB/ACCOUNT/)

APPLY (/WEB/APPLY-NOW/)

Chat

# EXHIBIT B
## Skytrail Cash's "Standard Interest Rate" as of June 30, 2020

6/30/2020                                          SkyTrailCash.com

 Promo Code   Login

## Sample Loan Information

THE FOLLOWING TABLE PROVIDES AN EXAMPLE OF A PAYMENT SCHEDULE FOR AN INITIAL LOAN AMOUNT OF $400.00

Please Note: You always have the option to pay the loan off in full with no pre-payment penalty. In fact, SkyTrailCash.com encourages the accelerated reduction of loan principal to reduce the total number of payments made by the customer, thereby reducing the overall cost of credit.

STANDARD MONTHLY LOAN

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| 780.30% | $1,661.35 | $400.00 | $2,061.35 |

Sample Payment Schedule

| Payment Number | Payment Amount | Payment Due On |
|---|---|---|
| 1 | $206.08 | 06/15/2020 |
| 2 | $206.08 | 07/15/2020 |
| 3 | $206.08 | 08/14/2020 |
| 4 | $206.08 | 09/15/2020 |
| 5 | $206.08 | 10/15/2020 |

Chat

# EXHIBIT B
## Skytrail Cash's "Standard Interest Rate" as of June 30, 2020

6/30/2020                                           SkyTrailCash.com

| | | | |
|---|---|---|---|
| 6 | $206.08 | Chat | |
| 7 | $206.08 | 12/15/2020 | |
| 8 | $206.08 | 01/15/2021 | |
| 9 | $206.08 | 02/15/2021 | |
| 10 | $206.63 | 03/15/2021 | |

THE FOLLOWING TABLE PROVIDES AN EXAMPLE OF A PAYMENT SCHEDULE FOR AN INITIAL LOAN AMOUNT OF $500.00

Please Note: You always have the option to pay the loan off in full with no pre-payment penalty. In fact, SkyTrailCash.com encourages the accelerated reduction of loan principal to reduce the total number of payments made by the customer, thereby reducing the overall cost of credit.

STANDARD BI-WEEKLY LOAN

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| 779.85% | $2,515.56 | $500.00 | $3,015.56 |

Sample Payment Schedule

| Payment Number | Payment Amount | Payment Due On |
|---|---|---|
| 1 | $150.75 | 06/12/2020 |
| 2 | $150.75 | 06/26/2020 |

Chat

# EXHIBIT C
## Rushmore Financial's Rates and Terms as of June 30, 2020

6/30/2020

Rates and Terms | Rushmore Financial



Questions? Call Now **1-855-836-3650**

| HOME | Returning Customer Apply | FAQs | CONTACT | PORTAL |

### Rates and Terms

Loans will generally be due on your next payday that falls between 8 to 31 days away.

### Loan Costs
The total number of payments and APR will vary with each loan based on the amount borrowed and the loan term or time needed to pay-off. Missed payments due to Non-Sufficient Funds or by the decision of your financial institution to dishonor the charge will be subject to a fee of $25 and will be added to any outstanding loan balance after 3 business days. Below are examples of the payment schedule if minimum payments are made until the loan is paid in full. This is an expensive way to pay off a loan and you can greatly reduce the total cost of your loan by paying it off on your first due date or making additional payments. There is no penalty for early payment.

### Payment Schedule
Your full payment schedule will be included in your loan agreement and will include the maximum number of payments you could have and includes payment due dates and amounts.

|  |  |  |  | Stretch | | | |
|---|---|---|---|---|---|---|---|
| Loan Amount | ▾ | $100 | $200 | $300 | $400 | $500 |  |
| 10 | 1704.50% | $33 | $66 | $99 | $132 | $165 |  |
| 11 | 1065% | $33 | $66 | $99 | $132 | $165 |  |
| 12 | 1098.73% | $33 | $46 | $99 | $132 | $165 |  |
| 13 | 926.54% | $33 | $66 | $99 | $132 | $165 |  |
| 14 | 860.36% | $33 | $56 | $99 | $132 | $165 |  |
| 15 | 802% | $33 | $66 | $99 | $132 | $165 |  |
| 16 | 752.61% | $33 | $66 | $99 | $132 | $165 |  |
| 17 | 706.57% | $33 | $66 | $99 | $132 | $165 |  |
| 18 | 664.17% | $33 | $66 | $99 | $132 | $165 |  |
| 19 | 633.95% | $33 | $66 | $99 | $132 | $165 |  |

# EXHIBIT C
## Rushmore Financial's Rates and Terms as of June 30, 2020

6/30/2020

Rates and Terms | Rushmore Financial

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20 | 602.25% | $33 | | $66 | $99 | $132 | $165 |
| 21 | 573.57% | $33 | | $66 | $99 | $132 | $165 |
| 22 | 547.50% | $33 | | $66 | $99 | $132 | $165 |
| 23 | 523.70% | $33 | | $66 | $99 | $132 | $165 |
| 24 | 501.88% | $33 | | $66 | $99 | $132 | $165 |
| 25 | 481.80% | $33 | | $66 | $99 | $132 | $165 |
| 26 | 463.27% | $33 | | $66 | $99 | $132 | $165 |
| 27 | 446.11% | $33 | | $66 | $99 | $132 | $165 |
| 28 | 430.18% | $33 | | $66 | $99 | $132 | $165 |
| 29 | 415.34% | $33 | | $66 | $99 | $132 | $165 |
| 30 | 401.50% | $33 | | $66 | $99 | $132 | $165 |
| 31 | 388.55% | $33 | | $66 | $99 | $132 | $165 |
| 4 | 1505.63% | $16.50 | | $33 | $49.50 | $66 | $82.50 |
| 5 | 1204.50% | $16.50 | | $33 | $49.50 | $66 | $82.50 |
| 6 | 1003.75% | $16.50 | | $33 | $49.50 | $66 | $82.50 |
| 7 | 860.36% | $16.50 | | $33 | $49.50 | $66 | $82.50 |

### Annual Percentage Rate
The APR is the cost of your loan expressed as a yearly rate. The above APRs have been based on example loan terms of one payment ("Check Amount") due in 8 to 31 days. The APR will increase if the actual loan term is shorter than these examples, and will decrease if your loan term is longer.

### Customer Service
For questions or concerns regarding your loan or personal loans in general, you may call our customer service at 855-836-3650.

### Terms
FSST Financial Services, LLC, dba Rushmore Financial is a tribal lending entity wholly owned by Flandreau Santee Sioux Tribe, a federally recognized Indian tribe, which operates and makes loans within the Tribe's reservation. All loans are subject exclusively to the laws and jurisdiction of the Flandreau Santee Sioux Tribe.

By accessing the www.RushmoreFinancial.net website and using the services on this site, you agree to be bound by the terms and conditions ("Terms") below. Please read these Terms carefully. If you do not agree to these Terms, do not access or use this website. The www.RushmoreFinancial.net website is operated by FSST Financial Services, LLC, dba Rushmore Financial. All references below to www.RushmoreFinancial.net include FSST Financial Services, LLC, dba Rushmore Financial.

FSST Financial Services, LLC, dba Rushmore Financial is a direct lender and will evaluate all loan requests submitted from any of its lead forms. If FSST Financial Services, LLC, dba Rushmore Financial is able to facilitate the loan, the consumer will be directed to www.RushmoreFinancial.net e-Signature documents. If

# EXHIBIT D
## Axis Advance's Rates and Fees as of June 30, 2020

## Rates and Fees

### Installment Loans

Installment loans charge daily interest (simple interest method) unlike payday loans where you are charged a "flat fee" for the loan. Think of an installment loan similar to a car loan in the sense that the quicker and more frequently you pay, the less interest you will have paid on that loan. The difference is we do not secure collateral to make a loan to you other than verified facts based upon your application you submitted.

### How much money can I borrow with Axis Advance?

You can qualify for up to $1,000 with a simple interest installment loan online with AxisAdvance.com (https://www.axisadvance.com). Your unique circumstance such as your current income, employment, and other basic factors will be considered to determine your qualified loan amount. Any new borrowers of Axis Advance, will be subject to our first time max loan amount of $600. All current VIP customers who have paid according to their agreement may be eligible for a larger loan amount.

### How much will my loan cost?

This is a great question to ask so you can be in control of your financial decisions. If your circumstances require that you take out an installment loan, the most efficient way to save money is to pay the loan off quickly. Reality of life happens to us so it is best to understand how your loan works. Your APR and repayment will vary depending on several factors like dollar amount, length of your loan, and repayment frequency. APR range for a $300-$1500 is 420%-780%.

### Example Loan Terms:

Chat with us, we are online!

# EXHIBIT D
## Axis Advance's Rates and Fees as of June 30, 2020

6/30/2020                                                    Axis Advance: Installment Loan Rate & Fees

Loan Amount: $300
Term: 12 months
APR: 660%
Payment: $76.37 (Bi-Weekly repayments)

**Number of Payments | Payment Amount | Payment Due Date**

| Number of Payments | Payment Amount | Payment Due Date |
|---|---|---|
| 1 | $76.37 | 1/3/14 |
| 2 | $76.37 | 1/17/14 |
| 3 | $76.37 | 1/31/14 |
| 4 | $76.37 | 2/14/14 |
| 5 | $76.37 | 2/28/14 |
| 6 | $76.37 | 3/14/14 |
| 7 | $76.37 | 3/28/14 |
| 8 | $76.37 | 4/11/14 |
| 9 | $76.37 | 4/25/14 |
| 10 | $76.37 | 5/9/14 |
| 11 | $76.37 | 5/23/14 |
| 12 | $76.37 | 6/6/14 |
| 13 | $76.37 | 6/20/14 |
| 14 | $76.37 | 7/4/14 |
| 15 | $76.37 | 7/18/14 |
| 16 | $76.37 | 8/1/14 |
| 17 | $76.37 | 8/15/14 |

Chat with us, we are online!

# EXHIBIT D
## Axis Advance's Rates and Fees as of June 30, 2020

6/30/2020                                   Axis Advance: Installment Loan Rate & Fees

| 18 | $76.37 | 8/29/14 |
|----|--------|---------|
| 19 | $76.37 | 9/12/14 |
| 20 | $76.37 | 9/26/14 |
| 21 | $76.37 | 10/10/14 |
| 22 | $76.37 | 10/24/14 |
| 23 | $76.37 | 11/7/14 |
| 24 | $76.37 | 11/21/14 |
| 25 | $76.37 | 12/5/14 |
| 26 | $76.37 | 12/19/14 |

**\*ANNUAL PERCENTAGE RATE:** APR (Annual Percentage Rate) the APR is the total cost of your loan expressed as an annual rate. The above APR's are based on the example loan terms of payment due bi-weekly (26 repayments) over 12 months. The APR will increase if the actual loan term is shorter than the examples given and will decrease if the term is longer.

Axis Advance, LLC loan agreements are governed by the Iipay Nation of Santa Ysabel, a federally recognized Indian Tribe.

Axis Advance, LLC
PO Box 645
Santa Ysabel, CA 92070
(760) 654-0120

### When will my Axis Advance loan be due?

Making the loan process easy and friendly is one of our goals at Axis Advance. You have the option of choosing between 4 months or 12 months to repay your installment loan. We base your payments on how frequently you are paid such as bi-weekly or semi-monthly.

### Is extending my loan an option?

Chat with us, we are online!

# EXHIBIT E
## Blue Dart's LinkedIn as of June 30, 2020

6/30/2020                          Blue Dart Ventures, LLC Mission Statement, Employees and Hiring | LinkedIn

**Linked**in                                                    Join now    | Sign in |

Blue Dart Ventures, LLC in Worldwide



### Blue Dart Ventures, LLC

Marketing and Advertising

Prairie Village, Kansas · 118 followers

Complete business solutions for companies small and big.

View all 15 employees

See jobs    | Follow |

---

## About us

Blue Dart Ventures, LLC is a solutions company for businesses big and small providing marketing, compliance, human resources, technology, and accounting services. Let us handle the details so you can enjoy running your business.

# EXHIBIT E
## Blue Dart's LinkedIn as of June 30, 2020

6/30/2020                                          Blue Dart Ventures, LLC Mission Statement, Employees and Hiring | LinkedIn

| | |
|---|---|
| Website | http://www.bluedartventures.com ☑ |
| Industries | Marketing and Advertising |
| Company size | 11-50 employees |
| Headquarters | Prairie Village, Kansas |
| Type | Privately Held |
| Founded | 2016 |
| Specialties | Human Resources, Development & IT, Accounting, Compliance, Marketing, Advertising |

## Locations

Primary
2310 W. 75th St
Prairie Village, Kansas 66208, US
Get directions

## Employees at Blue Dart Ventures, LLC

**Steve St Arnold**
President at Blue Dart Ventures LLC

**Jason Morrow**
Treasury Manager

**Michael Hewitt**
Software Developer at Blue Dart Ventures, LLC

**Bethanie White**
Director of Marketing at Blue Dart Ventures, LLC

# EXHIBIT F
## Riverbendcash.com Domain Name Registration Records

```
Domain: riverbendcash.com
Record Date: 2012-03-25
Registrar: GODADDY.COM, LLC
Server: whois.godaddy.com
Created: 2012-03-23
Updated: 2012-03-23
Expires: 2014-03-23

Record:
Registrant:
   My Cash Center, LLC
   1614 Hampton Rd
   Texarkana, Texas 75501
   United States

   Registered through: GoDaddy.com, LLC (http://www.godaddy.com)
   Domain Name: RIVERBENDCASH.COM
      Created on: 23-Mar-12
      Expires on: 23-Mar-14
      Last Updated on: 23-Mar-12

   Administrative Contact:
      Humphrey, John   jhumphrey@dmpinvestments.net
      My Cash Center, LLC
      1614 Hampton Rd
      Texarkana, Texas 75501
      United States
      +1.9037940013      Fax --

   Technical Contact:
      Humphrey, John   jhumphrey@dmpinvestments.net
      My Cash Center, LLC
      1614 Hampton Rd
      Texarkana, Texas 75501
      United States
      +1.9037940013      Fax --

   Domain servers in listed order:
      NS61.DOMAINCONTROL.COM
      NS62.DOMAINCONTROL.COM
```

# EXHIBIT G
## Riverbendcash.com IP Address Information

IP Address and Server Location

Dallas, TX, US

show map

| | |
|---|---|
| Location | Dallas, Texas, 75270, United States |
| Latitude | 32.7787 / 32°46'43" N |
| Longitude | -96.8217 / 96°49'18" W |
| Timezone | America/Chicago |
| Local Time | 2020-06-30 11:01:36-05:00 |
| IPv4 Addresses | 50.116.18.253 |

# EXHIBIT H
## Google Street View for 1614 Hampton Rd., Texarkana, TX



# EXHIBIT I
## FactorTrust Disclosure for Unrelated Consumer

FactorTrust

https://www.factortrust.com/consumer/Report.aspx

| Date Reported | Employer | Stated Monthly Income | Payroll Frequency | Dispute Date |
|---|---|---|---|---|



**TRADES**

| Lender Name | Customer ID | Consumer Contact | Credit Type | Date Opened | Date Last Reported | High Credit/Limit | Balance | Past Due Amt | Terms | Loan Status | 15 | 30 | 60 | 90 | 120 | 150+ | Months Reviewed | Loan ID | Dispute Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RBC Servicing LLC | 2778 | 1614 Hampton Road Texarkana, TX 75503 888-387-1977 customerservice@riverbendcash.com | PD | | | | | | | | | | | | | | | | |

**BANK ACCOUNTS**

# EXHIBIT J
## Google Street view of 597 Peace Pipe Rd., Lac Du Flambeau, WI 54538



# EXHIBIT K
## Domain Registration Records for skytrailcash.com

**Whois Record on Jun 21, 2012**

No adjacent screenshot
available for this date.

```
Registrant:
  My Cash Center, LLC
  1614 Hampton Rd
  Texarkana, Texas 75501
  United States

  Registered through: GoDaddy.com, LLC (http://www.godaddy.com)
  Domain Name: SKYTRAILCASH.COM
    Created on: 19-Jun-12
    Expires on: 19-Jun-14
    Last Updated on: 19-Jun-12

  Administrative Contact:
    Humphrey, John  jhumphrey@dmpinvestments.net
    My Cash Center, LLC
    1614 Hampton Rd
    Texarkana, Texas 75501
    United States
    +1.9037940013

  Technical Contact:
    Humphrey, John  jhumphrey@dmpinvestments.net
    My Cash Center, LLC
    1614 Hampton Rd
    Texarkana, Texas 75501
    United States
    +1.9037940013

  Domain servers in listed order:
    NS09.DOMAINCONTROL.COM
    NS10.DOMAINCONTROL.COM
```

# EXHIBIT L
## Plaintiff's Experian Consumer Disclosure, August 27, 2019, Inquiries

Account name
CLARITY SERVICES INC

Date of request(s)

19/26

8/27/2019

Experian - Access your credit report

01/23/2019
11/28/2018
09/11/2018

Comments
On behalf of LOAN AT LAST (5940) for 30

Account name
CLARITY SERVICES INC

Date of request(s)

01/23/2019
01/07/2019

Comments
On behalf of RBC RIVERBEND (1269) for 30

Account name
CLARITY SERVICES INC

Date of request(s)

01/23/2019
11/28/2018
09/11/2018

PO BOX 5717
CLEARWATER, FL 33758
No phone number available

Comments
On behalf of LOAN AT LAST (5940) for 30

Account name
CLARITY/RBCRIVERBEND

Date of request(s)

01/23/2019
01/07/2019

1614 HAMPTON RD
TEXARKANA, TX 75503
No phone number available

20/26

# EXHIBIT L
## Plaintiff's Experian Consumer Disclosure, August 27, 2019, Inquiries

8/27/2019                                    Experian - Access your credit report



Account name
CLARITY SERVICES INC

PO BOX 5717
CLEARWATER, FL 33758
866 390 3118

Date of request(s)
11/20/2018

Comments
On behalf of AXIS ADVANCE (2680) for 30

Account name
CLARITY SERVICES INC

PO BOX 5717
CLEARWATER, FL 33758
No phone number available

Date of request(s)
11/30/2018

Comments
On behalf of 005LEND (9424) for 30

Account name
CLARITYA005LEND

603 W BROAD AVE
FLANDREAU, SD 57028
No phone number available

Date of request(s)
11/30/2018

Account name
CLARITY SERVICES INC

PO BOX 5717
CLEARWATER, FL 33758
866 390 3118

Date of request(s)
11/29/2018

Comments
On behalf of SKY TRAIL CASH (5962) for 30

Account name
CLARITY SERVICES INC

Date of request(s)
11/29/2018

# EXHIBIT L
## Plaintiff's Experian Consumer Disclosure, August 27, 2019, Inquiries



8/27/2019

Experian - Access your credit report

PO BOX 5717
CLEARWATER, FL 33758
*No phone number available*

Comments
On behalf of OXFORD FINANCIAL SER (00 for 30

Account name
SKY TRAIL CASH

Date of request(s)
11/29/2018

597 PEACE PIPE RD FL 2
LAC DU FLAMBEAU, WI 54538
*No phone number available*

22/26

# EXHIBIT M
## Inquiry Appearing on unrelated Consumer's FactorTrust Disclosure

| | | |
|---|---|---|
| Previous Account Inquiry Detail 2 Date | 09252015 | |
| Previous Account Inquiry Detail 2 CustName | CREDITSERV / LOANATLAST | |
| Previous Account Inquiry Detail 2 State | CA | |
| Previous Account Inquiry Detail 2 Zip | 900383989 | |
| Previous Account Inquiry Detail 2 Date | 09252015 | |

# EXHIBIT N
## IP Address Information for AxisAdvance.com



Where is axisadvance.com hosted?

42°44'05.3"N 84°37'28.2"W
View larger map

Delta Charter Township

Lansing

Potter Park Zoo
Temporarily closed

Google

Map data ©2020   Terms of Use   Report a map error

| | |
|---|---|
| Server IP: | 69.16.237.64 |
| ASN: | AS32244 |
| ISP: | Liquid Web, L.L.C |
| Server Location: | Lansing |
| | Michigan, MI |
| | 48917 |
| | United States, US |

# EXHIBIT O
## Plaintiff's FactorTrust Consumer Disclosure, January 21, 2020, Inquiries Excerpt

| Date Reported | Routing Number | Account Number | Dispute Date |
|---|---|---|---|
|  |  |  |  |

**PAYMENTS**

| No Payments on file |
|---|

**INQUIRIES INITIATED BY CONSUMER ACTION**

Inquiries Initiated By Consumer Action refers to inquiries resulting from a transaction initiated by you. These include applying for a credit card or completing an application at a financial institution. Please note that the inquiries are part of your credit history and may be included in our reports to others.

| Date | Customer ID | Name | Consumer Contact | Dispute Date |
|---|---|---|---|---|
|  |  |  | 256 Data Drive |  |
| 01/23/2019 | 3595 | Rushmore Financial | P.O. Box 283<br>Flandreau, SD 57028<br>855-836-3650<br>customerservice@fsttservices.com |  |
|  |  |  | 11900 BISCAYNE BLVD |  |
| 11/28/2018 | 3595 | Rushmore Financial | P.O. Box 283<br>Flandreau, SD 57028<br>855-836-3650<br>customerservice@fsttservices.com |  |

# EXHIBIT P
## Plaintiff's Trans Union Consumer Disclosure, January 31, 2020, Excerpt



CUSTOMER 3655 via FACTORTRUST INCFSST FINA
8900 INDIAN CREEK PKWY
SUITE 300
OVERLAND PARK, KS 66210
(855) 836-3650

Requested On: 01/23/2019

Page 18 of 23

# EXHIBIT P
## Plaintiff's Trans Union Consumer Disclosure, January 31, 2020, Excerpt



**Requested On:** 01/07/2019

**CUSTOMER 2984 via FACTORTRUST INCFSST FINA**
8900 INDIAN CREEK PKWY
SUITE 300
OVERLAND PARK, KS 66210
(855) 838-3650

**Requested On:** 11/28/2018

Additional Information

The following disclosure of information might pertain to you. This additional information may include Special Messages, Office of Foreign Assets Control ("OFAC") Potential Name Matches, Inquiry Analysis, Military Lending Act ("MLA") Covered Borrower Information, and/or Third Party Supplemental Information. Authorized parties may also receive the additional information below from TransUnion.

Third Party Supplemental Information

In addition to the information maintained in the above credit report, TransUnion will occasionally contact a third party for supplemental information in connection with a particular transaction in response to a request from a particular customer. Listed below is the supplemental data that TransUnion obtained from such third parties, as well as the name(s) of the TransUnion customer for whom it was obtained.

**SUPPLEMENTAL PUBLIC RECORDS AND RESIDENTIAL INFORMATION**

# EXHIBIT Q
## Plaintiff's FactorTrust Consumer Disclosure, January 21, 2020, Additional Information Excerpt



**ADDITIONAL INFORMATION FROM: LexisNexis Risk Solutions Bureau LLC**
Additional information may be provided to FactorTrust by LexisNexis Risk Solutions Bureau LLC. The most recent information FactorTrust received from LexisNexis Risk Solution Bureau LLC relative to you is listed below; however, the information contained on the files of LexisNexis Risk Solutions Bureau LLC, may have changed since it was provided to FactorTrust. If you have questions or wish to dispute the accuracy of the information reported below, please see the Notices section of this correspondence for more information regarding how to submit a dispute.

**Date information received: 9/11/2018**

| Name | Value | Dispute Date |
|---|---|---|
| Current address tax assessed market value | | |
| Derogatory severity index based on the type of record | | |
| Evictions in last 60 months | | |
| Federal tax liens filed | | |
| Index indicating how often subject has changed addresses | 5 | |
| Indicates if a subject's last name is listed on input address deed or tax record, but first name is not (likely family owned) | | |
| Indicates if input phone number is associated with transient or institutional address, such as hotel, campground, warehouse, mail drop, institutional, or correctional facility | | |
| Indicates if input SSN was issued within last 12 months | | |
| Indicates if subject first and last name are listed on current address deed or tax record | | |
| Indicates if subject has ownership of assets (watercraft, aircraft, or real property) | | |
| Indicates if subject owned or rented next most recent previous address | | |
| Indicates if the input address in address history | | |
| Indicates if the input address is verified | | |
| Indicates if the subject's input SSN is verified | | |
| Indicates if there have been one or more collection inquiries in the last 12 months | | |
| Indicates if there have been one or more inquiries not classified as collections or personal finance inquiries in the last 12 months | | |
| Indicates if there have been one or more personal finance inquiries in the last 12 months | | |
| Indicates input phone validation status | | |
| Indicates subject's input address may not be primary residence | | |
| Indicates the field study type – grouped based on similar areas of study and average incomes for occupations typically associated with those fields of study | -1 | |
| Input address most recent tax assessed value | | |
| Input address tax assessed market value | | |
| Liens filed in last 24 months | | |
| Most recent real property sale price | | |
| Non-derogatory public records updated in past 60 months | | |
| Number of addresses first seen for subject in last 12 months | | |
| Number of addresses first seen for subject in last 24 months | | |
| Number of addresses first seen for subject in last 60 months | | |
| Number of addresses first seen for subject in last month | | |
| Number of addresses first seen for subject in last six months | | |
| Number of addresses first seen for subject in last three months | | |
| Number of derogatory public records within the last 12 months | | |
| Number of real property ever owned | | |
| Personal finance inquiries or requested offers for subprime credit services (Ex. Short-term loans or rate credit cards) associated with the subject | | |
| Previous address most recent tax assessed value | | |
| Requested offers for subprime credit services by subject in the last 24 months | | |
| Requested offers for subprime credit services by subject in the last 60 months | | |

# EXHIBIT Q
## Plaintiff's FactorTrust Consumer Disclosure, January 21, 2020, Additional Information Excerpt



| | |
|---|---|
| Risk index summarizing recent activity for the subject as reported within the past three months | |
| Risk Logic Score | |
| Subject has requested alert on their file indicating their identity may have been stolen | |
| Subject has requested an alert on their file | |
| Subject has requested security freeze on their file | |
| Subject's estimated annual income rounded to the nearest $1000 | |
| Sum of tax assessed values for all real property currently owned | |
| Time between first and last date reported at current address | |
| Time between first and last date reported at input address | |
| Time since earliest recorded real property purchase | |
| Time since most recently recorded derogatory public record (Most derogatory records limited to 84 months, and only bankruptcies can return values up to 120 months) | |
| Time since most recently recorded felony conviction | -1 |
| Time since phone service first seen in the Electronic Directory Assistance (EDA) records | |
| Time since subject was first reported at input address | |
| Time since subject was first reported at the current address | |
| Time since subject was most recently reported at input address | |
| Time since the oldest recorded event for subject | |
| Time since the subject last moved | |
| Time since the subject was first reported at the previous address | |
| Time since the subject was most recently reported at the current address | |
| Time since the subject was most recently reported at the previous address | |
| Time since the subject was most recently reported in other phone sources | |
| Total bankruptcy filings | |
| Total derogatory public records (felonies, liens, bankruptcies, and evictions) | |
| Total dollar amount of all liens filed | |
| Total dollar amount of filed court judgment liens, for example collections debt or civil damages | |
| Total evictions | |
| Total felony convictions | |
| Total filed lien records | |
| Total non-derogatory public records, for example, phone records, professional licenses, and property records | |
| Unique addresses found with SSN | |
| Unique addresses, first reported in last six months, found with subject | |
| Unique identities found with input phone number | |
| Unique SSNs found with subject | |
| Wealth index based on relative value of real property and other assets on file | 3 |

## NOTICES

You have a right to dispute any item of information contained in your consumer file. If you believe information in your file may be inaccurate or incomplete, please submit your dispute online at https://www.factortrust.com/Consumer/Disputes.aspx. Under normal circumstances, FactorTrust will inform you of the results of the investigation within approximately 30 days.

You may be entitled to place a statement of dispute on your consumer file. Your statement must not exceed two hundred and fifty characters. Your statement must not include the names of other individuals or businesses. Your statement must pertain to the information contained in your consumer file and must not contain profanity. You may submit your statement to FactorTrust by calling 1-844-773-3321.

## CONTACT INFORMATION

FactorTrust, Inc.
P.O. Box 3653
Alpharetta, GA 30023
(844)773-3321

LexisNexis Risk Solutions Consumer Center
PO BOX 105289
Atlanta, GA 30348
(866)321-0921
(800)831-5578

ChexSystems
7805 Hudson Road
Suite 100
Woodbury, MN 55125
(800)513-7125

Trans Union LLC
P.O. Box 1000
Chester, PA 19016
(800)916-8800

Today 3:52 PM

251 Little Falls
Left in basket, guard on
rounds - wht lady serving
papers too - she xalled
toowaited i didn't
1:58pm
3500 Dupont
Casey Pineda  - horse
face and teeth, short
brown hair, ponytail,
glasses, 50s, 165lbs, 5'4,
blk tee wht writing, blk
spandex
3:50